MORRIS PARK ESTATES v. DAY et al.   (No. 7399.)

(Supreme Court, Appellate Division, First Department.   June 4, 1915.)

REFERENCE ⬤⟿18—ACCOUNTING—DETERMINATION OF ISSUES.

In an action against an auctioneer for an accounting of the proceeds of an auction sale received by him, where, under the pleadings, it was in issue whether the auctioneer was entitled to certain knockdown fees claimed by him, and whether the owner had ratified the expenditure by the auctioneer of sums for advertising in excess of the limit originally fixed, those issues materially affected the scope of the accounting, and the court should have determined them before ordering the taking of an accounting by a referee.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 24, 34; Dec. Dig. ⬤⟿18.]

Appeal from Special Term, New York County.

Action for an accounting by the Morris Park Estates against Joseph P. Day and another. From an interlocutory judgment directing an accounting and appointing a referee to take it, the defendants appeal. Reversed, and case remitted for the determination of issues affecting the scope of the accounting.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Sayer Bros., of New York City (Ignatius A. Scannell, of New York City, of counsel), for appellant Day.

Ehrich & Wheeler, of New York City (Manfred W. Ehrich, of New York City, of counsel), for appellant Davies.

Sullivan & Cromwell, of New York City (Francis D. Pollak, of New York City, of counsel, and Ralph Royall, of New York City, on the brief), for respondent.

'CLARKE, J. The complaint sets up a transaction in regard to the preparation for the sale of over 3,000 lots of the Morris Park Property; that the defendants, who were real estate agents, brokers, and auctioneers, were employed to advise as to the preparation for sale of the land at public auction, to produce the advertising copy and manage the advertising of said property for such auction sale, and to furnish their services as auctioneers and in managing the conduct of the said auction and the sale of the said property on the actual days of sale; that they were authorized to incur expenses for $150,000 worth of advertising, and were to conduct the sale, upon which the successful bidders were to deposit with the defendants, as auctioneers and agents, 10 per cent. in cash of the amount of their respective bids and $15 as auctioneer's fees; that their commissions were based upon different percentages in respect to the different amounts that the property might sell for; that several days after the commencement of the auction sale the defendants informed the plaintiff that they had disobeyed their instruction and exceeded their limitation of $150,000 in the purchase of advertising for such auction sale, and that the advertising for such auction sale would aggregate about $240,000; that the plaintiff informed the defendants that it would hold them responsible for the payment of any and all advertising contracted by them in disobedience of their instructions and beyond limit of their authority; that the purchasers upon the said auction actually paid to the defendants in cash an aggregate sum approximately $435,000, such payments being composed chiefly of the cash deposits of 10 per cent. of the amount of the purchase price for the respective properties sold, in accordance with the said provisions of the said terms of sale, and being in part composed of other moneys paid by purchasers, in addition to such 10 per cent. on account of the purchase price at the time of the auction sale, and being in part composed of the knockdown fees paid in accordance with said terms of sale. Although duly demanded by the plaintiff, the defendants have never accounted to the plaintiff for the said sum so received by them from such purchasers, aggregating approximately $435,000, or any part thereof, nor have they paid the same, nor any part thereof, over to the plaintiff, excepting that, upon the order of the plaintiff, they have made certain payments aggregating $41,936.04. The complaint sets up a list of actions against the plaintiff, and judgments obtained therein, many of which they have paid, and others of which are on appeal, to recover the value of advertising purchased by the defendants; that plaintiff served upon defendants notices of the pendency of said actions, and gave them an opportunity to come in and defend. Wherefore it asks for an accounting.

The answer, admitting the employment, alleges that by a written agreement, executed and delivered contemporaneously with the contract set up in the complaint, it was provided that defendants should receive the usual auctioneer's and knockdown fees from the purchasers of the property, but denies that such auctioneer's fees were to be received by them as agents for or for the account of the plaintiff. Defendants admit that the purchasers at the auction sale paid to them cash deposit of approximately 10 per cent. of the purchase price of the property sold, such deposits amounting to $379,467.97, and that said purchasers paid them certain knockdown fees, which were, under the agreement of the parties, to belong to the defendants, and not to be accounted for to the plaintiff; that they have made the payments set forth in the tenth paragraph of the complaint, and allege that they have made further payments, aggregating $212,734.46. They allege that each and every contract made by them in behalf of the plaintiff for advertising the auction sale, or involving other expenses relating thereto, was at or about the time of the making thereof submitted to the plaintiff by the defendants, and duly authorized, approved, and ratified by it, and that prior to the 26th of May, 1913, it had become evident to both the plaintiff and defendants that the cost of advertising said auction sale would greatly exceed the sum of $150,000, and that this fact was before and after said date subject to frequent discussions between the defendants and plaintiff, and that the plaintiff expressly instructed the defendants to proceed therewith, and ratified and confirmed all contracts and expenditures in excess of the sum of $150,000; that the difference between the amounts received by them of cash deposits on account of the purchase price, namely, $379,467.97, and the amounts paid on the order of the plaintiff on account of advertising charges or the expenses of the sale, namely, $212,734.46, was $166,733.51, which was applied against the compensation provided to be paid by the defendants under the contract, such amount being subject to the auctioneer's lien; that the property sold for $3,747,925, and their commissions earned under the contract were $261,130.46, no part of which has been paid, except $166,733.51, leaving a balance of $94,396.99. Wherefore they demand judgment dismissing the complaint, and that they have judgment for said sum.

Upon these pleadings a motion was made for an interlocutory judgment for an accounting and directing a reference, which motion was granted, and from the interlocutory judgment entered thereon this appeal was taken. The appellants claim that there are certain questions of law which should be determined by the interlocutory judgment in advance of the actual accounting. They claim that under the agreement the knockdown fees, which amount to over $45,000, belong absolutely to them, and therefore they are not accountable therefor; that the expenditures for advertising purposes above the amount of $150,000 were all authorized, approved, and ratified by the plaintiff, and they ought not to be required to account therefor until it is determined that the expenditures for such purposes above $150,000 were not proper.

It seems to us that these are two vitally important questions, seriously affecting the scope of the accounting, which should first be determined by the court before the actual taking thereof. Goodman v. Roth, 135 App. Div. 515, 120 N. Y. Supp. 328, was an appeal from an order granted on the pleadings and an interlocutory judgment for an accounting. It was not questioned that an accounting was proper, but there were issues of fact as to whether the defendants were accountable for certain matters. The court said:

"These denials raise an issue of fact, which must be decided before an account of such proceeds can be required. * * * It is the duty of the court, in the first instance, to determine the issues affecting the scope of the accounting, and send to a referee only the duty of taking the account within the lines laid down by the court."

That case seems in all respects applicable to that at bar.

The judgment and order appealed from should be reversed, with costs, the motion for judgment on the pleadings denied, with $10 costs to the appellants, and the case remitted to the Special Term for the determination of the matters for which the defendants are legally accountable. Settle order on notice. All concur.